IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| KIMBERLY BURRUS | * | |
|---|---|---|
| Plaintiff, | * | |
| | | Civil Action No. RDB-19-0142 |
| v. | * | |
| BALTIMORE CITY POLICE DEPARTMENT, | * | |
| | * | |
| Defendant. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Kimberly Burrus ("Burrus" or "Plaintiff") brought this action in the Circuit Court for Baltimore City, Maryland against the Baltimore City Police Department ("BPD" or "Defendant") seeking to enforce procedural due process rights that she alleges were not afforded to her as part of a disciplinary personnel action in October and November 2018. (Compl., ECF No. 1-3.) The case was removed to this Court on January 15, 2019. (*See* ECF No. 1.)[1] Burrus alleges that the Defendant violated the Fourteenth Amendment to the Constitution of the United States, Article 24 of the Maryland Declaration of Rights, and violations of the Law Enforcement Officers' Bill of Rights ("LEOBR"), Md. Public Safety Code Ann. § 3-101 *et seq*. (Compl., ECF No. 1-3.)

Currently pending before this Court is Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 9). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons

---

[1] This case was removed to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. (ECF No. 1.) Plaintiff's verified Complaint alleges violations of the Fourteenth Amendment to the Constitution of the United States. (Compl., ECF No. 1-3.)

that follow, Defendants' Motion, construed as a Motion to Dismiss, shall be GRANTED, and Plaintiff's Complaint (ECF No. 1-3) shall be DISMISSED WITH PREJUDICE.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The Court may consider only such sources outside the complaint that are, in effect, deemed to be part of the complaint, for example, documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Burrus is a police officer, having served with the BPD as a Major for about 6 years and as a Lieutenant for about two years. (Compl. ¶¶ 1, 2, pp. 8-9, ECF No. 1-3.) At some point prior to 2015, Burrus established a 501(c)(3) non-profit organization, Blue Love Across America (*Id.* at ¶ 3; Burrus Decl. ¶¶ 7, ECF No. 18-2.) Burrus was accused of misappropriating money from the non-profit between June 2015 and September 2017—specifically she was accused of directing the use of non-profit funds for personal expenditures. (Compl. ¶ 3, p. 10, ECF No. 1-3.) On July 11, 2018, the Baltimore State's Attorney's Office, having reviewed evidence of the allegations, announced that they were not filing charges against her. (*Id.* at ¶ 4.) However, on October 17, 2018, Burrus was served with documents alleging violations of the rules and regulations governing the BPD. (*Id.* at ¶ 3, pp. 10-17.)[2] The charges included

---

[2] In her Complaint, Burrus alleges the date as October 18, 2018, but the attached charging documents referenced in her Complaint indicate that she was served on October 17, 2018. (Compl. p. 16, ECF No. 1-3.)

details of personal purchases she made with non-profit funds and included a recommended punishment of a 60-day suspension, a severe letter, an involuntary transfer to the BPD Patrol division, and a demotion to Lieutenant from Major. (*Id.*) Burrus was not interviewed prior to the charges issued on October 17, 2018. (*Id.* at ¶ 7.) Burrus refused to sign the acknowledgment or response. (*Id.* at pp. 16-17.)

Burrus, with her attorney, met with Gary Tuggle ("Tuggle"), Interim Police Commissioner, on November 2, 2018. (*Id.* at ¶ 6, p. 18.) After Burrus expressed her concerns about not having been interviewed, Tuggle arranged for her to meet with the case investigator on November 6, 2018. (*Id.* at ¶ 16, p. 18.) However, she declined to attend the meeting alleging that she would not be allowed the assistance of her attorney and would be "Mirandized"[3] during the interrogation. (*Id.*) Tuggle undertook an independent review of the investigation, reviewing Burrus' explanation and documentation that she provided during the November 2, 2018 meeting regarding two expenditures. (*Id.* at p. 16.) Tuggle provided a letter to Burrus on November 14, 2018,[4] modifying the punishment, and stating: "Regardless of whether you initially funded the charity or intended to reimburse [the non-profit] for the purchase, the use of [non-profit] funds to finance personal expenditures is completely inappropriate and conduct unbecoming of a Major of this Department." (*Id.*) Tuggle modified the recommended discipline in two respects: (1) her transfer was to an alternate assignment rather than to patrol; and (2) her 60-day suspension without pay could be served non-consecutively so that she could maintain benefits. (*Id.*) The personnel action, under

---

<sup>3</sup> Referring to being informed of her legal rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).
<sup>4</sup> Burrus alleges that she received the letter on November 16, 2018. (Compl. ¶ 8, ECF No. 1-3.)

3

which she was demoted to Lieutenant and transferred, was effective November 25, 2018. (*Id.* at ¶ 9, p. 19.)

The charges against her were disclosed to the public by her husband, a fellow officer, during their divorce proceeding on December 1, 2017. (*Id.* at ¶ 20; *see also* Tr., Mot. Ex. A, ECF No. 9-2.) The Baltimore Sun asked the BPD for comment, "and the department said that they were 'looking into this matter internally.'" (*Id.*) She alleges that as a result of these "false" charges now being part of the public sphere, her reputation has been damaged, and her future employment prospects will be affected. (*Id.* at ¶¶ 21-22.)

Burrus filed suit in the Circuit Court for Baltimore City, Maryland on December 14, 2018, alleging that the BPD's actions were taken without the process that she was due as a Lieutenant under the Law Enforcement Officers' Bill of Rights ("LEOBR"). (Compl., ECF No. 1-3.) Burrus seeks a "name-clearing hearing," and her prayer for relief includes: (1) BPD be required to show cause why she should not be afforded her rights under the Fourteenth Amendment to the United States Constitution, Article 24 of the Maryland Declaration of Rights and the LEOBR; (2) all currently imposed sanctions, other than loss in rank from Major to Lieutenant, be stayed pending resolution of this case; and (3) a preliminary injunction to enjoin BPD from all punishment without due process under LEOBR. (*Id.*) This case was removed to this Court on January 15, 2019. (ECF No. 1.) BPD filed the pending dismissal motion on February 22, 2019, and it is now ripe for decision. For the reasons that follow, this Court concludes that Burrus is not entitled to the procedural protections provided by LEOBR, she has no property interest protectible by the Due Process Clause, and she was afforded a fair opportunity to be heard regarding any liberty interest that she alleges. Further, any attempt

at amendment would be futile. Therefore, this Court shall GRANT Defendant's Motion to Dismiss (ECF No. 9), and Plaintiff's Complaint shall be DISMISSED WITH PREJUDICE.

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks

omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

I.     **Due Process Right to be Heard**

Burrus claims that because the charges against her were made public, she has a due process right to have a name-clearing hearing. (Compl. ¶ 20, ECF No. 1-3 (citing *Sciolino v. City of Newport News*, 480 F.3d 642 (4th Cir. 2007).) As noted in *Sciolino*, a claim under 42 U.S.C. § 1983 involves a combination of two constitutional rights: "(1) the liberty to engage in any of the common occupations of life; and (2) the right to due process where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." 480 F.3d at 646 (citations and alterations omitted). Burrus contends that the charges of theft will remain in her personnel jacket for the rest of her career, and her demotion under the circumstances was without appropriate opportunity to be heard. (Pl.'s Resp. 9, ECF No. 18.) She contends that she "has a fundamental interest to be 'free from arbitrary restrictions upon the opportunity for other gainful employment.'" (*Id.* (quoting *Boston v. Webb*, 783 F.3d 1163, 1166 (4th Cir. 1986).)

BPD contends that Burrus' claim is foreclosed by the United States Court of Appeals for the Fourth Circuit's decision in *Johnson v. Morris*, 903 F.3d 996, 999 (4th Cir. 1990). (Mot. Mem. 12, ECF No. 9-1.) In *Johnson*, the plaintiff had been demoted and transferred for alleged misconduct on the job, and he alleged this his employer's public announcement of the reasons for his demotion without notice and an opportunity to be heard prior to the demotion deprived him of his liberty interests in his reputation and future career opportunities. *Id.* at

998. The *Johnson* Court held that "[p]ublication of stigmatizing charges alone, without damage to 'tangible interests such as employment,' does not invoke the due process clause." *Id.* at 999. Since the plaintiff had remained employed, he had suffered no damage to his employment status, and any harm to the chances for career advancement was not the result of the publication of the reasons but rather, would be a result of the actual reasons for the demotion. *Id.* at 999-1000. In this case, Burrus has remained employed by the BPD, so she has not suffered damage to her employment status. It is also arguable whether the BPD published the charges. However, accepting as true Burrus' allegation that the BPD's ratification of the Baltimore Sun report serves as publication (*see* Burrus Decl. ¶ 25, ECF No. 18-2), and that the charges were false (Compl. ¶ 21, ECF No. 1-3), this Court shall consider Burrus' contention that she was denied a meaningful opportunity to be heard.

"To state this type of liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Sciolino*, 480 F.3d at 646 (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 n. 5 (4th Cir. 1988)). The constitutional harm in this context is "the denial of a hearing at which the dismissed employee has an opportunity to refute the public charge." *Id.* at 649 (quoting *Cox v. N. Va. Transp. Comm'n*, 551 F.2d 555, 558 (4th Cir. 1976)). That is, the interest protected is to "clear [one's] name against unfounded charges." *Boston*, 783 F.3d at 1167 (citations omitted).

Accepting for purposes of this dismissal motion that Burrus has sufficiently alleged the right to a hearing, this Court concludes that Burrus was not denied a meaningful opportunity

7

to be heard. In this context, due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 426 U.S. 319, 333 (1976); *see also Cannon v. Village of Bald Head Island, North Carolina*, 891 F.3d 489, 502 (4th Cir. 2018) ("'[T]his opportunity to be heard 'must be granted at a meaningful time.'" (quoting *Sciolino*, 480 F.3d at 653)). However, in this context, due process does not require an adversarial proceeding with the ability to cross-examine witnesses, nor does it require "city officials to prove cause" since there is no constitutionally-protectible property interest at issue. *Boston*, 783 F.3d at 1167.

Burrus includes in her Complaint that she was provided an opportunity to be heard, accompanied by her attorney, before Interim Police Commissioner Tuggle on November 2, 2018. (Compl. ¶ 6, p.18, ECF No. 1-3.) Tuggle also arranged for her to meet with the case investigator on November 6, 2018, although she declined to attend that meeting. (*Id.* at ¶ 16, p. 18.) Burrus also refused to sign the response to the charging document with a request to be heard. (*Id.* at p. 17.) Moreover, Tuggle accepted Burrus' explanation and documentation that she provided to him at the November 2, 2018 meeting, and accordingly lessened her punishment. (*Id.*) This Court concludes that Burrus was accorded the procedural due process due under the circumstances of this case. *See Boston*, 783 F.3d at 1167-68.

Accordingly, Burrus fails to plead a cognizable claim that her due process rights have been violated. Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 9), construed as a Motion to Dismiss, shall be GRANTED, and Plaintiff's due process claim shall be DISMISSED WITH PREJUDICE.

## II. Law Enforcement Officers' Bill of Rights

The Law Enforcement Officers' Bill of Rights ("LEOBR"), Md. Public Safety Code Ann. § 3-101 *et seq.*, was enacted by the Maryland General Assembly "to guarantee certain procedural safeguards to law enforcement officers during any investigation or interrogation that could lead to disciplinary action, demotion, or dismissal." *Md–Nat'l Capital Park & Planning Comm'n v. Anderson*, 884 A.2d 157, 175-76 (Md. Ct. Spec. App. 2005) (citations omitted). P.S. § 3-107 provides that a "law enforcement agency shall give notice . . . of the right to a hearing by a hearing board" to a law enforcement officer who has been recommended for "demotion, dismissal, transfer, loss of pay, reassignment, or similar action that is considered punitive." P.S. § 3-107(a)–(b). The definition of "Law enforcement officer" does not include "an individual who serves at the pleasure of the Police Commissioner of Baltimore City." P.S. § 3-101(e)(2)(i).

Burrus agrees that as a major, she served at the pleasure of the Commissioner, and being demoted to a lieutenant is not a disciplinary matter since could be demoted at the pleasure of the Commissioner. (Compl. ¶¶ 11-12, ECF No. 1-3.) However, Burrus argues that she is entitled to the procedural protections under LEOBR prior to her 60-day suspension as a lieutenant can be implemented, i.e., she contends that once she was stripped of her rank, she could not be subsequently suspended as a lieutenant without first being offered a "full opportunity to be heard." (*See id.* at ¶¶ 12-15; Pl.'s Resp. 10-11, ECF No. 18-1.) However, Burrus is either misconstruing the events surrounding her disciplinary action, or she is making a fundamentally flawed argument. It is clear from the face of her Complaint, that Burrus was serving as a major, at the pleasure of the Commissioner, when she was accused of an infraction

9

and was disciplined, and the disciplinary action included the 60-day suspension. (*See* Compl. ¶¶ 3, 8, 9, pp. 10-19.) That the suspension must be served as a lieutenant because she was also demoted, does not result in the suspension being imposed upon her as a lieutenant. The charging document clearly shows her rank as major. (*Id.* at p. 10.) Although on review, Interim Police Commissioner Tuggle provided some relief with regard to the disciplinary action, namely, allowing the suspension to be served non-consecutively to ensure that she could maintain her benefits, such relief does not re-impose the disciplinary action on her in her newly-demoted rank as a lieutenant. Further, Burrus states that the personnel action was not effective until November 25, 2018, which was nine days after she received the punishment letter. (*Id.* at ¶¶ 8-9, p. 19.) There is simply no authority to support her position that she was entitled to the procedural protections provided by LEOBR.

Accordingly, Plaintiff's claim under the Law Enforcement Officers' Bill of Rights shall be DISMISSED WITH PREJUDICE.

### III. Amendment is Futile

In her Opposition to the pending Motion, Burrus noted that she wished to amend her complaint to include Baltimore Public Local Laws as appropriate. (Pl.'s Resp. 2 n.1, ECF No. 18.) To the extent that Burrus argues that she is entitled to relief under such claims not alleged in her pleadings, this Court does not consider those arguments. *See Freilich v. Bd. of Dirs. of Upper Chesapeake Health, Inc.*, 142 F. Supp. 2d 679, 691 n. 7 (D. Md. 2001).

Further, it would be futile for Burrus to amend her Complaint to include such a claim. The Baltimore Public Local Law ("PLL") does not apply under the circumstances in this case. Plaintiff's appointed rank of major is not within the scope of protected persons covered by

PLL § 16-11, which details disciplinary proceeding requirements for members of the BPD. Section 16-11(a) specifically excludes those serving at the pleasure of the Commissioner. Section 16-11(b) states in part:

> No member of the Police Department may be dismissed or removed except after written charges have been preferred, reasonable notice provided, and full opportunity afforded to be heard in the member's own defense, either before the Police Commissioner, or before a Police Disciplinary Board which may be created by the Commissioner, consisting of such members of the Department as the Commissioner may from time to time determine.

PLL §16-11(b). As discussed above, Burrus had notice and an opportunity to be heard before the Interim Police Commissioner Tuggle, and she was offered further opportunities that she declined. PLL § 16-11(b) requires nothing further.

A district judge may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011). In this case, Burrus is not entitled to the procedural protections provided by LEOBR, she cannot claim a protected property interest, and this Court concludes that even if she properly alleges a liberty interest to clear her name, she was afforded a meaningful opportunity to be heard. Therefore, an opportunity to amend would be futile. Plaintiff's Complaint shall be DISMISSED WITH PREJUDICE.

## CONCLUSION

For the foregoing reasons:

1. Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 9) is GRANTED.
2. Plaintiff's Complaint is DISMISSED WITH PREJUDICE.
3. A separate Order follows.

Dated: September 26, 2019.

\_\_\_\_/s/_____
Richard D. Bennett
United States District Judge